Your Affiant, Randy Helderop, being duly sworn, hereby deposes and states as follows:

1. Your Affiant is a Special Agent (SA) with Homeland Security Investigations assigned to the office of the Resident Agent (RA) office in Bismarck, North Dakota. Your Affiant has been employed by HSI since September of 2004. Your Affiant has a Bachelor of Science degree in Criminal Justice from Boise State University in Boise, Idaho, and has successfully completed the Criminal Investigator Training Program and HSI Special Agent Training at the Federal Law Enforcement Training Center in Glynco, Georgia. Prior to his employment with HSI, your Affiant was a Special Agent with the United States Department of Health and Human Services, Office of Inspector General from 2002-2004. Your Affiant also worked in local law enforcement as a Deputy Sheriff, Police Officer, and Detective from 1995-2002. Your Affiant is assigned to the North Dakota Internet Crimes Against Children (ICAC) Task Force and has worked numerous investigations involving the online sexual exploitation of children.

2. Brandon Rask is a Detective with the Bismarck Police Department (BPD) and has been employed with the Bismarck Police Department since October of 2002. Detective Rask has in excess of 1,200 Law Enforcement training hours in addition to an Associate's degree in Criminal Justice from Bismarck State College. Detective Rask is a member of the ICAC Task Force. Specific to the area of online child exploitation and commercial sex trafficking, Detective Rask has in excess of 200 Law Enforcement training hours and has worked on numerous investigations involving the sexual exploitation of children and has assisted on the prosecution of those cases in both state and federal court.

3. The statements in this affidavit are based on your affiant's personal observations, training and experience, investigation of this matter, and information obtained from other investigators and

witnesses to include Detective Rask. Because this affidavit is being submitted for the limited purpose of securing a search warrant, your Affiant has not included each and every fact known to him concerning this investigation. Your Affiant has set forth the facts that he believes necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of violations of 18 U.S.C. §§ 2251(a) and 2251(e), Sexual Exploitation of a Child; 18 U.S.C. §§ 2422(b), Coercion and Enticement of a Minor to Engage in Unlawful Sexual Activity; 18 U.S.C. §§ 1470, Transfer of Obscene Materials to a Minor; and 18 U.S.C. §§ 2252A(a)(2) and (b)(1), Receipt of Materials Involving the Sexual Exploitation of Minors (further referenced as the Specified Federal Offenses) are present in data provided to Detective Rask in electronic format from Snapchat, an electronic service provider (ESP) pursuant to a search warrant issued in North Dakota District Court. Your Affiant makes this affidavit in support of an application for a search warrant to search the data provided to Detective Rask pursuant to a previously authorized search warrant for violations of the Specified Federal Offenses.

3. The information sought and accounts to be searched are described in the following paragraphs and in Attachments A and B. Your Affiant has probable cause to believe that evidence of violations of the Specified Federal Offenses is located within the electronic data provided pursuant to the search warrant. The data was obtained on August 28, 2020 by Detective Rask, and has not been reviewed by Detective Rask or by any other law enforcement investigator. The data is currently held by Detective Rask in electronic format at the Bismarck Police Department located at 700 South Ninth Street in Bismarck, ND. Your Affiant has reason to believe that the data associated with Snapchat accounts "madyr.gray," "mady.gray," "emmag5002," "emma_grace20050," "ndcyrus98," "yoitz2snow," and "raynnjensen" will have stored information, data, and communications that are relevant to this investigation. This includes, but is not limited to,

evidence of the identity of the person maintaining the accounts and other social networking accounts the person has engaged with in communications. Thus, as outlined below, and based on your Affiant's training and experience, there is probable cause to believe that evidence, contraband, fruits and/or instrumentalities of the aforementioned crimes are located in these accounts.

## STATUTORY AUTHORITY

4. This investigation concerns alleged violations of the following statutes relating to material involving the sexual exploitation of minors:

a. 18 U.S.C. § 2252A(a)(2) and (b)(1) prohibits a person from knowingly distributing or receiving any child pornography, as defined in 18 U.S.C. §2256(8), when such child pornography was either mailed or shipped or transported in interstate or foreign commerce by any means, including by computer, or attempting or conspiring to do so. 18 U.S.C. § 2252A(a)(5) also prohibits a person from possessing or accessing with the intent to view child pornography that has been shipped or transported in interstate commerce.

b. 18 U.S.C. §§ 2251(a) and 2251(e), Sexual Exploitation of a Child, prohibits a person from knowingly using, persuading, inducing, enticing, or coercing a minor, to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct, knowing, and having reason to believe, that such visual depictions if produced, as requested, would result in their transmission using a means and facility of interstate and foreign commerce. This statute also covers the attempt to facilitate the identified criminal activity.

c. 18 U.S.C. §§ 2422(b), Coercion and Enticement of a Minor to Engage in Unlawful Sexual Activity, prohibits a person from using a facility of interstate and foreign commerce to knowingly

persuade, induce, entice, and coerce a minor to engage in sexual activity for which any person could be charged with a criminal offense, or attempts to do so.

d.  18 U.S.C. §§ 1470, Transfer of Obscene Materials to a Minor, prohibits a person from using the mail or any facility or means of interstate or foreign commerce, knowingly transfers obscene matter to another individual who has not attained the age of 16 years, knowing that such other individual has not attained the age of 16 years, or attempts to do so.

5.  The legal authority for this search warrant application is derived from Title 18, United States Code, chapter 121, §§ 2701-11, entitled "Stored Wire and Electronic Communications and Transactional Records Access."  18 U.S.C. § 2703(c)(A) allows for nationwide service of process of search warrants for the contents of electronic communications.  Pursuant to 18 U.S.C. § 2703, as amended by the USA PATRIOT Act, Section 220, a government entity may require a provider of an electronic communication service or a remote computing service to disclose a record or other information pertaining to a subscriber or customer of such service pursuant to a warrant issued using procedures described in the Federal Rules of Criminal Procedure by a court with jurisdiction over the offense under investigation.

## DEFINITIONS

6.  The following definitions apply to this Affidavit and its Attachments:

   a. The term "minor," as defined in 18 U.S.C. § 2256(1), refers to any person under the age of eighteen years.

   b. The term "sexually explicit conduct," 18 U.S.C. § 2256(2)(A)(i-v), is defined as actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation;

(d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic areas of any person.

c. The term "visual depiction," as defined in 18 U.S.C. § 2256(5), includes undeveloped film and videotape, data stored on computer disc or other electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.

d. The term "computer," as defined in 18 U.S.C. § 1030(e)(1), means an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device.

e. The term "child pornography," as defined in 18 U.S.C. § 2256(8), means any visual depiction, including any photograph, film, video, picture, or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct;

   i. such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct;

   ii. or such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct.

## BACKGROUND REGARDING SNAPCHAT

7. Snapchat is a mobile application made by Snap Inc. and is available through the iPhone App Store and Google Play. The application provides a way to share moments with photos, videos, and

text. Snapchat's differentiating feature from other communications applications is that a sender is able to set a variable amount of time the message is viewable by the receiver. This time can be between one and ten seconds. At the expiration of time, the message is deleted from Snapchat's servers. Similarly, the message disappears from the user's devices. If the receiver of a Snapchat message does not access the application on their device the message remains undelivered. Snapchat stores undelivered messages for 30 days. After 30 days the messages are deleted from the company's servers.

8.  Snapchat users have the following abilities:

   a.  Snaps: A user takes a photo or video using their camera phone in real-time and then selects which of their friends to send the message to. Pictures and videos can also be sent from the saved pictures/videos in the gallery of the device. Unless the sender or recipient opts to save the photo or video, the message will be deleted from their devices (after the content is sent in the case of the sender and after it's opened in the case of the recipient). Users are able to save a photo or video they've taken locally to their device or to Memories, which is Snapchat's cloud-storage service.

   b.  Stories: A user can add photo or video snaps to their "Story". Depending on the user's privacy settings, the photos and videos added to a Story can be viewed by either all Snapchatters or just the user's friends for up to 24 hours. Stories can also be saved in Memories. Our Stories is a collection of user submitted snaps from different locations and events. A Snapchat user, with the location services of their device turned on, can contribute to a collection of snaps regarding the event.

   c.  Memories: Snapchat's cloud-storage service. Users can save their sent or unsent Snaps, posted Stories, and photos and videos from their phone's photo gallery in Memories.

A user can also edit and send Snaps and create Stories from these Memories. Snaps, Stories, and other photos and videos saved in Memories are backed up by us and may remain in Memories until deleted by the user.

d.  Chat: A user can also type messages, send photos, videos, audio notes, and video notes to friends within the Snapchat app using the Chat feature. A user sends a Chat message to a friend, and once it is viewed by both parties – and both parties swipe away from the Chat screen – the message will be cleared. Within the Snapchat app itself, a user can opt to save part of the Chat by tapping on the message that they want to keep. The user can clear the message by tapping it again.

e.  Snapcash: Snapchat also offers a money transfer service called Snapcash. Users are able to transfer up to $2,500 per week using this service. Snapcash transactions are only permitted using Visa and Mastercard debit cards issued by a United States Financial Institution. Money transfers can only occur if the sender and receiver both have Snapchat installed and have linked an appropriate debit card to their accounts. To facilitate these transactions, Snapchat retains information about the method and source of payment including debit card information such as the card number, expiration date, CVV security code, and billing address zip code. Additionally, the company may have the date of birth and social security number of those involved in money transfers.

9.  Information that Snapchat possesses and maintains:

a.  Personally Identifying Information: When a user creates an account they make a unique Snapchat username. This is the name visible to other Snapchat users. A user also enters a data of birth. This is supposed to prevent anyone under the age of 13 from using Snapchat. An email address is required to register a Snapchat account. A new user also has

to provide a mobile phone number. This phone number is verified during the registration process. Snapchat sends an activation code that must be entered before proceeding with the registration step. However, a user may elect to bypass entering a phone number so one may not always be present in the user's account. Snapchat also retains the account creation date.

b.      Usage Information:  While a Snapchat message may disappear, the record of who sent it and when still exists. Snapchat records and retains log files and information that is roughly analogous to the call detail records maintained by telecommunications companies. This includes the date, time, sender, and recipient of a snap. Additionally, Snapchat stores the number of messages exchanged, which users they communicate with the most, message status including if and when the message was opened, and whether the receiver used the native screen capture function of their device to take a picture of the snap before it disappeared.

c.      Device Information: Snapchat stores device information such as the model, operating system, operating system version, mobile device phone number, and mobile network information of devices used in conjunction with the service. They also collect unique device identifiers such as the Media Access Control (MAC) address and the International Mobile Equipment Identifier (IMEI) or Mobile Equipment Identifier (MEID) of devices used to access Snapchat.

d.      Device Phonebook and Photos: If a user consents, Snapchat can access from their device's electronic phonebook or contacts list and images.

e.      Financial information: Snapchat retains information about the method and source of payment of customers who use the Snapcash service. This includes debit card information such as the card number, expiration date, CVV security code, and billing address zip code.

Additionally, the company may have the date of birth and social security number of those involved in money transfers. Snapcash generate a receipt for any transaction. The receipts are programmed to automatically delete after the sender and recipient have seen the message and swiped out of the Chat screen, unless either taps to save the message. Snapchat maintains transactional records for ten days. These records include information about the sender and receiver, the transaction amount, and date/time stamps of when the message was sent, received, and opened.

f.  Message Content: Snapchat's motto is 'delete is our default.' Snapchat deletes a snap once it has been viewed. If the message is not read, because the user has not opened up the application, the message is stored for 30 days before being deleted. However, just because the snap no longer appear to the user, doesn't necessarily mean they are gone. For example, Snapchat has a feature called Replay. This allows users to view a previously viewed snap once per day. This feature is disabled by default and the user must opt-in to use Replay. Also, if a Snapchat user posts an image or video to the MyStory feature it can be viewed by their friends for 24 hours. If the user posted to the Our Stories feature, the snaps are archived and can be viewed through Snapchat.

10. Therefore, the computers of Snapchat are likely to contain all the material just described, including stored electronic communications and information concerning subscribers and their use of Snapchat, such as account access information, transaction information, and account application.

## INDIVIDUALS WITH AN INTEREST IN CHILD PORNOGRAPHY

11. Based on your Affiant's training and experience related to prior child sexual exploitation investigations, and the training and experience of other law enforcement officers with whom your Affiant has had discussions, your Affiant has learned that individuals who view and receive images

of child pornography are often individuals who have a sexual interest in children and in images of children. These individuals may receive sexual gratification, stimulation, and satisfaction from contact with children; or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media; or from literature describing such activity. These individuals often maintain their collections in electronic format either on computer, an electronic storage device, or in cloud storage areas, which can be accessible from any device with internet access and are password protected. These collections are often maintained for several years and are kept close by, usually at the collector's residence, to enable the individual to view the collection, which is valued highly.

12. Individuals who have a sexual interest in children or images of children also may correspond with and/or meet others to share information and materials; rarely destroy correspondence from other child pornography distributors/collectors; conceal such correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography.

## BACKGROUND OF CURRENT INVESTIGATION

13. On April 23rd, 2020, Detective Rask began an investigation into the reported conduct of Dawson Mackenzie ROUSE. During this investigation, four juvenile females were identified as having electronic communications with ROUSE over the social media messaging application Snapchat. The Snapchat username that was used by ROUSE for these communications was identified by Detective Rask as dakotadawson98. Some of these females were reported to have snuck out in the middle of the night to meet with ROUSE. As a result of this information, all four juvenile females were interviewed to determine the extent of their contact with ROUSE. These

females included 14-year-old females M.G., E.V., and A.D. as well as 13-year-old female R.J. All of the following conduct disclosed by each of the females is alleged to have occurred between January 1st, 2020 and April 15th, 2020.

14.     During an interview with 14-year-old victim E.V., E.V. disclosed that she had become Snapchat friends with ROUSE after he had randomly requested her as a friend on Snapchat this year. During Snapchat conversations with ROUSE, ROUSE continuously requested that E.V. send him nude images of herself via Snapchat. The continuous pressure from ROUSE eventually led to her sending him a picture of herself in a bra in an attempt to get his requests to stop. In a similar conversation, ROUSE asked E.V. if she would be willing to sign a consent form to engage in sexual contact with ROUSE. Eventually, ROUSE invited E.V. to sneak out of her residence in the middle of the night to meet with him. This meeting occurred on April 15th, 2020. During this meeting, E.V. reported that ROUSE attempted to kiss her multiple times and touch her thigh, but she moved away from him to prevent further contact. E.V. indicated that she had two Snapchat accounts that she had previously utilized for communications. These accounts had usernames emmag5002 and emma_grace20050.

15.     During an interview with 14-year-old victim M.G., she disclosed that she had become Snapchat friends with ROUSE after he had randomly requested her as a friend on Snapchat this year. During Snapchat conversations with ROUSE, ROUSE continuously requested that M.G. send him nude images of herself. The continuous pressure from ROUSE eventually led to her sending him numerous images that she describes to be close-up images of her nude breasts, buttocks, and genitals. In response to receiving these images, ROUSE returned images and videos to M.G. M.G. described these images and videos to depict a male's nude penis believed to be ROUSE's genitalia. The videos, as described by M.G., depicts a male, believed to be ROUSE, masturbating.

Eventually, ROUSE invited M.G. to sneak out of her residence in the middle of the night to meet with him. This meeting occurred on April 15th, 2020. During this meeting, M.G. reported ROUSE attempted to touch her thigh, but she moved away from him to prevent the contact. M.G. also reported that ROUSE had referred her to another Snapchat user that ROUSE referred to as his 17-year-old brother, Cyrus. ROUSE does not have a brother named Cyrus and investigators later learned through the investigation that ROUSE was also believed to be utilizing the Snapchat account of ndcyrus98 to communicate with other victims. M.G. indicated that she had two Snapchat accounts that she had previously used for communications. These accounts had usernames of madyr.gray and mady.gray.

16. During an interview with 14-year-old victim A.D., she disclosed that she had become Snapchat friends with ROUSE after M.G. had friended ROUSE from A.D.'s Snapchat account earlier in 2020. During Snapchat conversations with ROUSE, ROUSE requested a "blowjob" from A.D. and indicated that he wanted to take her virginity. ROUSE invited A.D. to sneak out of her home to meet with him. On an unknown night within the listed date range, ROUSE contacted A.D. at 2:00 a.m. to ask her where he was to go to pick her up. A.D. had second thoughts and informed ROUSE that she did not want to meet with him. Thus, the meeting between ROUSE and A.D. never occurred. A.D. indicated that the Snapchat account username that she had been utilizing to communicate was yoitz2snow.

17. During an interview with 13-year-old victim R.J., she disclosed that she had become Snapchat friends with ROUSE after adding him on Snapchat in 2020. R.J. indicated that she added ROUSE simply because her friends E.V. and M.G. were friends with ROUSE as well. During conversations with ROUSE on Snapchat, ROUSE convinced R.J. to sneak out of her residence in the middle of the night and meet with him. After picking her up, ROUSE took R.J. to the detached

garage at his residence of 3603 Heartland Loop in Burleigh County. Upon arriving at this location, R.J. indicated that ROUSE made her undress. ROUSE then retrieved a condom from a black toolbox with his name on it. R.J. reported that ROUSE then laid her on the back of a boat that was present in the garage and engaged in sexual intercourse with R.J. During vaginal intercourse, R.J. reported that ROUSE held her down and pulled her hair. The used condom was thrown away after the encounter ended. This meeting occurred on an unknown night within the listed time frame. R.J. provided a detailed account of the physical appearance of the garage's interior as well as an account of numerous property items that were present in the garage. R.J. indicated that the Snapchat account username that she had been communicating from was raynnjensen.

18.     On April 24th, 2020, your Affiant assisted Bismarck Police Department detectives with the execution of a search warrant at the detached garage of 3603 Heartland Loop in Burleigh County. Numerous long hairs were located on the back of the boat located within the garage. Two used condoms were also located in a trash can inside the garage. Furthermore, a small black toolbox with a padlock was located inside the garage. On the outside of the toolbox was a sticker with the name "Dawson ROUSE." Upon opening the toolbox, multiple boxes of condoms were located inside the storage container. The physical appearance of the garage's interior was consistent with the description previously provided by R.J.

19.     Numerous victims reported that the communications with ROUSE also occurred over text messaging. The phone number used by ROUSE to communicate with the victims was identified as (701) 934-1036. This phone number was searched within the Bismarck Police Department database and learned to be associated with Dawson ROUSE. The phone number is issued by the mobile provider Verizon. Detective Rask later obtained data related to the Verizon phone number pursuant to a search warrant issued in North Dakota District Court.

20.     In addition, M.G. reported having communicated with Cyrus over text messaging. A phone number for Cyrus was located in her phone. This phone number was identified as (701) 595-5511. Detective Rask conducted an investigation into the number and learned that this number is a Voice Over Internet Protocol number, commonly referred to as a VOIP number. VOIP is a communications protocol used by many mobile phone applications that are primarily used for the same communication purposes of a mobile phone such as calling, texting, etc. Although VOIP numbers have numerous legitimate purposes, they are also frequently used to engage in telephonic communications while attempting to hide one's identity. Through investigation, Detective Rask learned that the phone number (701) 595-5511 is a VOIP number issued by the service provider Pinger, Inc. Pinger is the developer of a mobile communication application as previously described. The Pinger applications can be used to communicate telephonically with other phone numbers and was believed to have been utilized for such purposes in this case. It is probable that data, consisting of subscriber information, phone call logs, text message content, etc. for VOIP number (701) 595-5511 was retained within Pinger, Inc., records.

21.     Prior to the execution of the search warrant for ROUSE's residence, a mobile phone was seized from his possession. The phone was later determined to be assigned phone number (701) 934-1036. The phone was one of the variations of the Apple iPhone X. On ROUSE's phone, a screen recording video was located that showed ROUSE accessing his My Eyes Only folder within Snapchat. My Eyes Only is a password protected storage location within Snapchat where a user can store images and videos  As ROUSE scrolled through this folder, numerous images and videos of nude females could be seen stored within this folder. Many of these females appeared to be under the age of 18. The files are categorized by month and year. The oldest files seen in the screen recording are from July of 2017. Based on this video, it is probable that the dakotadawson98

Snapchat account has been used since July of 2017 for the purpose of obtaining child sexual exploitation materials. Some of that obtained material appears to then be stored in the My Eyes Only folder within the dakotadawson98 Snapchat account.

22. Additional examination of the phone showed that the Apple ID associated with the phone was dakotadawson@bis.midco.net. Detective Rask was able to determine that ROUSE's phone had been backed up to iCloud on April 24th, 2020. It is also likely that the phone had been backed up numerous times prior to April 24th, 2020. It is also probable that some of these data backups will contain location data, evidence of communications, evidence of stored images, etc. that are relevant to the investigation of this case. On April 23 and 24th, Detective Rask preserved account information for the Pinger account associated with VOIP phone number (701) 595-5511; Snapchat accounts dakotadawson98, yoitz2snow, ndcyrus98, raynnjensen, emmag5002, madyr.gray; and the iCloud account data associated with dakotadawson@bis.midco.net.

23. On or about May 5, 2020, Detective Rask served a North Dakota District Court search warrant on Pinger, Inc. requesting data related to the VOIP number of (701) 595-5511. On or about May 6, 2020, Detective Rask served two North Dakota District Court search warrants on Snapchat for the accounts identified as involved in the investigation. Detective Rask also served a search warrant on Apple, Inc. for evidence related to the previously preserved account identified above.

24. On May 26, 2020, Detective Rask received a response to his search warrant from Pinger via email. The response included six Excel spreadsheets, two Word documents, and two PDF documents of information. Detective Rask did not review the materials provided in the return and maintained the data in electronic format in his possession.

25. On June 13th, 2020, Detective Rask was notified via email that the iCloud data previously requested via search warrant was available for download. From June 15-June 24, 2020, Detective

Rask downloaded the data which was provided in 14 zip files. Detective Rask did not review the materials provided and maintained the data in electronic format in his possession.

26. Further investigation conducted by Detective Rask and your Affiant revealed numerous minor victims that ROUSE had contacted via Snapchat and/or text messaging and had obtained or attempted to obtain illicit imagery from the individuals; arranged to meet or attempted to meet for sexual contact with the individuals, and/or transmitted obscene material to a minor under the age of 16 via electronic means.

27. On July 8, 2020, a 27 count Indictment charging ROUSE with violations of 18 U.S.C. §§ 2251(a) and 2251(e), Sexual Exploitation of a Child; 18 U.S.C. §§ 2422(b), Coercion and Enticement of a Minor to Engage in Unlawful Sexual Activity; and 18 U.S.C. §§ 1470, Transfer of Obscene Materials to a Minor was brought against ROUSE.

28. On or about August 19, 2020, Detective Rask received an email from Snapchat identifying the requested information for the Snapchat account of dakotadawson98 was available for download. On the same date, Detective Rask downloaded one zipped file of electronic data. Detective Rask did not review the material provided and maintained the data in electronic format in his possession.

29. On August 26, 2020, your Affiant received a United States District Court search warrant which authorized the search of the data received by Detective Rask from Pinger, Inc,. Apple, Inc., and Snapchat, Inc.

30. On August 28, 2020, Detective Rask received additional data from Snapchat for the Snapchat accounts of "madyr.gray," "mady.gray," "emmag5002," "emma_grace20050," "ndcyrus98," "yoitz2snow," and "raynnjensen." The data was downloaded by Detective Rask and maintained at the Bismarck Police Department in electronic format. Detective Rask did not review any of the data he had received.

**INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED**

31.     The data in Detective Rask's possession was obtained from the Electronic Service Provider pursuant to a search warrant authorized in North Dakota District Court. Your Affiant is requesting an additional search warrant to review the data obtained pursuant to the search warrant out of an abundance of caution and in order to comply with issues raised in the recent decision in <u>United States v. Nyah</u>, 928 F.3d 694 (8th Cir. 2019). Additionally, as the matter has now been Indicted in the Federal District Court of North Dakota, it is more appropriate to seek further authorization from the federal District Court prior to accessing the data and information which was provided by the ESP pursuant to the previously issued State search warrant.

**CONCLUSION**

32.     Based on your Affiant's training and experience, and the facts as set forth in this affidavit, there is probable cause to believe that located within the electronic files currently in the possession of Detective Rask at the Bismarck Police Department, there exists evidence of a crime, contraband and/or fruits of a crime. Based on the aforementioned factual information, your Affiant respectfully submits that there is probable cause to believe that the data located in Detective Rask's possession and further described in Attachment A, will contain evidence of a crime, specifically but not limited to, identification of the person who produced, received, viewed and/or distributed images of child sexual exploitation, or attempted or conspired to do so, and additional evidence about that production, distribution, viewing and receipt. Accordingly, a search warrant is requested.

33.     While it appears this Court has ample authority to issue a search warrant relevant to Rule 41 of the Federal Rules of Crim. Pro., because this data and information was provided by electronic service providers located outside the State of North Dakota, this Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. §

2711(3) and 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that - has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(I).

34. Manner of execution: Because this warrant seeks only permission to examine electronically stored information obtained from an electronic service provider which was provided to law enforcement in an electronically stored format, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, your Affiant submits there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

FURTHER YOUR AFFIANT SAYETH NOT

Randy W. Helderop
Special Agent
Homeland Security Investigations

Subscribed and sworn to me
This ___ day of September, 2020

Clare R. Hochhalter
Magistrate Judge, United States District Court